```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                          CHARLESTON

EDWARD LEE LEWIS,

        Movant,

v.                                    Case No. 2:04-cv-01009
                                      Case No. 2:02-cr-00042

UNITED STATES OF AMERICA,

        Respondent.
```

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant, Edward Lee Lewis's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (docket sheet document # 126). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following summary of the facts surrounding this case are derived from the Fourth Circuit's opinion affirming Defendant's conviction and sentence and the government's appellate brief:

From approximately January 4 through January 11, 2002, a series of four letters containing a white powdery substance, a cigarette butt and a threatening note were mailed to various individuals in the Charleston, West Virginia area. The addressees included a state circuit judge, the governor of West Virginia, and a federal district judge. A fifth letter containing the same

contents was mailed to President George W. Bush. The return address on each of the envelopes included the name "Gloria Fields."

In a subsequent interview by law enforcement officials, Ms. Fields indicated that, in the process of ending a brief relationship with Defendant, she had sent him some letters. Fields further indicated that it appeared that the person who had sent the letters containing the white powder had cut out words from one or more of the letters she had sent to Defendant and photocopied them onto stationery similar to that used by Fields to write the letters to Defendant.

Postal inspectors obtained an arrest warrant for Defendant. Following Defendant's arrest, a postal inspector looked through the window of Defendant's pick-up truck, which was parked in the driveway of the residence in which he was arrested. The postal inspector observed cigarette butts, a copy of the threatening letter that was mailed to the victims, the government listings, or "blue pages," from a phone book, and a typewriter.

A search warrant was obtained for the vehicle. Officers seized two typewriters, an original letter that Fields had sent to Defendant from which words had been cut out, matching stationery with the cut out words pasted on it to read, "If I were you I'd change my attitude," copies of that letter, a twelve-gauge shotgun, ammunition, and other incriminating evidence.

Prior to his jury trial, Defendant moved to suppress the evidence seized from his truck on the basis that it was seized as a result of an illegal search. The district court denied the motion to suppress, finding that the items were in plain view when first seen, and that they were seized pursuant to a valid search warrant.

Defendant was subsequently convicted by a jury of four counts of mailing a threatening communication, in violation of 18 U.S.C. § 876, one count of mailing a threatening communication to the President of the United States, in violation of 18 U.S.C. §§ 871 and 2(b), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On September 11, 2002, Defendant's Motion for Judgment of Acquittal and his Motion for a New Trial were denied. (# 85).

In Defendant's Presentence Report, the probation officer concluded that Defendant's sentence should be based primarily on his conviction for being a felon in possession of a firearm. Based upon Defendant's prior convictions on three counts of daytime burglary, the probation officer also determined that Defendant qualified as an "armed career criminal," pursuant to 18 U.S.C. § 924(e) and USSG § 4B1.4(b)(3)(B). As an armed career criminal, Defendant's total offense level was 33 and his criminal history category was IV, which resulted in a Guideline sentencing range of 188 to 235 months.

On November 7, 2002, Defendant was sentenced to 192 months of imprisonment, followed by a three-year term of supervised release, and the payment of a $600 special assessment. A Judgment was entered on November 12, 2002. (# 88).

Defendant sought an appeal to the United States Court of Appeals for the Fourth Circuit. (## 97 and 98). On appeal, Defendant challenged the District Court's denial of his motion to suppress evidence seized from his vehicle and the District Court's determination that Defendant qualified as an armed career criminal.

On November 10, 2003, the Fourth Circuit affirmed Defendant's conviction and sentence, finding that the "observation of unobscured items through the window of [Defendant's] pick-up truck did not constitute a search under the Fourth Amendment." United States v. Lewis, No. 02-4889, 75 Fed. Appx. 164, 2003 WL 22131439 (4th Cir. Sept. 16, 2003)(attached to # 134). The Fourth Circuit further found that Defendant had conceded that he pled guilty to three counts of daytime burglary in a West Virginia State court, that the offenses occurred on different days and involved different residences and victims, and that the offenses qualified as separate violent felonies for armed career criminal status. (Id.)

On August 27, 2004, the Clerk's Office mailed a letter to the United States Attorney requesting that the exhibits in Defendant's case be retrieved by September 10, 2004 or else they would be destroyed. (# 124). On September 10, 2004, the Clerk filed a

Destruction Certificate, indicating that the exhibits had been destroyed on that same date. (# 125).

Defendant filed the instant Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 on September 16, 2004. (# 126). Defendant raises four grounds for relief. First, Defendant claims that his conviction was gained by the use of evidence obtained through an illegal search and seizure. (# 126, Ground One). Defendant further claims that the government failed to disclose exculpatory evidence because it had the ability to trace the envelopes which contained the threatening communications that are the subject of Defendant's convictions to their location of mailing, and failed to do so. (Id., Ground Two). Defendant claims that he could not have mailed the communications because of inclement weather in his area and because his vehicle was inoperable at the time.

Defendant also claims that his court-appointed counsel, Carl J. Dascoli, Jr., provided ineffective assistance of counsel because he did not trace the envelopes, investigate the weather conditions, or investigate the condition of Defendant's truck during the period when the threatening communications were mailed. (Id., Ground Three). Finally, Defendant claims that his sentencing as an armed career criminal was improper because his underlying convictions for daytime burglary were one offense, not three. (Id. Ground Four).

5

On November 4, 2004, the United States filed a Response to Defendant's section 2255 motion (# 134), asserting that Defendant is entitled to no relief on his claims. Specifically, the United States asserts that Defendant's claims regarding the District Court's refusal to suppress the evidence found in Defendant's vehicle and the District Court's determination that Defendant qualified as an armed career criminal were fully litigated in Defendant's direct appeal and, therefore, he is barred from pursuing collateral relief on those claims. The United States further contends that it did not withhold any exculpatory evidence from Defendant, and that Defendant has not demonstrated that his counsel provided constitutionally ineffective assistance of counsel.

On November 22, 2004, Defendant filed a Reply, which basically reiterated the arguments as stated in his section 2255 motion. (# 135). The matter is ripe for determination.

## ANALYSIS

**A. Claims litigated in direct appeal.**

In Ground One of his section 2255 motion, Defendant contends that his conviction was obtained by the use of evidence that was obtained pursuant to an unconstitutional search and seizure. In Ground Four, Defendant contends that he was improperly sentenced as an armed career criminal. Both of these claims were raised in Defendant's direct appeal, and the Fourth Circuit found that they

6

had no merit.

As noted by the United States in its response, unless an intervening change in the law has justified revisiting a prior judicial determination, the right to pursue collateral relief through a section 2255 motion is not an invitation to re-litigate issues already resolved. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)(collateral attack cannot ordinarily be made on basis of issues litigated on direct appeal).

In the instant case, the United States Supreme Court recently issued a new ruling concerning what information a sentencing court may rely upon in making a determination that a defendant is an armed career criminal. See Shepard v. United States, 125 S. Ct. 1254 (2005). The Shepard court stated:

> We hold that enquiry under the [Armed Career Criminal Act] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of the information.

Id. at 1263. The Fourth Circuit specifically found that the Defendant's burglary convictions in West Virginia were separate offenses and met the elements of generic burglary required for armed career criminal status. As a precaution, the undersigned directed the United States to supplement the record with documentation from Defendant's State court criminal proceedings.

That documentation includes the charging documents and Defendant's guilty plea to three counts of daytime burglary in the Circuit Court of Putnam County, West Virginia. (# 141). Based upon a review of these documents, there is no basis under <u>Shepard</u> to re-litigate Defendant's classification as an armed career criminal.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is barred from pursuing these claims by way of collateral attack because he unsuccessfully raised these issues in his direct appeal.

**B. Failure to disclose exculpatory evidence.**

In Ground Two of his motion, Defendant contends as follows:

> Conviction obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant. This mailing could be traced to the area from which they were mailed from. But the prosecution did not! The mail was stop[ped] in my home area. This evidence could prove the petitioner could not have mailed these threatening letter[s] for the petitioner had no transportation.

(# 126 at 5, Ground Two). In support of this claim, and his claim of ineffective assistance of counsel, Defendant has provided copies of two "Road and Weather Conditions Reports" for January 7 and 8, 2002. (<u>Id.</u>, Ex. A). Defendant has also provided a copy of a newspaper article stating that the delivery of mail was hindered in some of Charleston's "steeper" neighborhoods, due to inclement weather, on or about January 7, 2002. However, the article does not identify the particular neighborhoods that were affected. (<u>Id.</u>, Ex. A2).

8

Defendant has also provided a letter from Mildred Deweese, a family member with whom Defendant was living at the time of his arrest, stating that Defendant did not leave her residence from January 1-11, 2002. (Id., Ex. A3). Defendant has also submitted a work order from Bert Wolfe Ford to check the brakes on his truck.[1] (Id., Ex. 2). Finally, Defendant has provided another newspaper article indicating that law enforcement officials have the capability of tracing bar codes placed on pieces of mail. (Id., Ex. 3). Defendant asserts that, had the government traced the bar codes on the envelopes mailed to the victims in his case, they would have determined that Defendant could not have mailed the letters from his home area during the time in question.

The United States' Response states as follows:

> It appears, however, that defendant believes that the United States did not put forth evidence that would have provided him with an alibi to the proposed mailings. In that regard, defendant makes reference to evidence that the mail was stopped in his area during the time of the offense and that he had no transportation to allow him to reach some alternative place of mailing. In response, the United States would submit that the allegations do not rise to the level of truly exculpatory evidence. The evidence regarding defendant's participation in the mailing was, as Judge Goodwin noted, so strong that it would be hard to imagine a stronger case of evidence . . . . Moreover, it is clear that defendant was fully aware of the evidence he accuses the United States of withholding at the time he was tried. At sentencing,

---

[1] Defendant appears to be providing this exhibit in support of his claim that his truck was not driveable during the time period in question. The undersigned notes, however, that the work order is dated for March 13, 2004, over two years after Defendant's arrest, and is addressed to a "Doris Wolfe," not Defendant.

>defendant expressly referred to a newspaper article that indicated that the mail had not run in his home area on one day. See, Sentencing Transcript, attached hereto as Exhibit D. Clearly, the evidence that defendant accuses the United States of withholding was in his possession, but his lawyer elected not to present it at trial.

(# 134 at 6).

In his Reply, Defendant states that he did ask for this evidence, but it was withheld. (# 135 at 8). On July 29, 2002, while represented by Mr. Dascoli, Defendant filed a pro se motion to "challenge the government to determine the exact post office in the Charleston area of which these threatening mailings came from." (# 54). That motion was denied on July 30, 2002, on the basis that Defendant was represented by counsel and could not file pro se motions. (# 55). As best as can be determined from the record, Mr. Dascoli did not file a motion to this effect on Defendant's behalf, but did cross-examine a government witness about the ability to trace bar codes on postal envelopes.

During Defendant's trial, Mr. Dascoli cross-examined Postal Inspector Burl Fluharty about the bar codes that are placed on envelopes by the Postal Service. The following colloquy occurred:

>Q. Now, when you -- if, for instance, if I mail a letter to someone and it goes through the processing center, once the addressee receives the letter, there are bar codes on the envelope, is that correct?
>
>A. That is correct, sir.
>
>Q. Okay. And these bar codes tell us where it was mailed from?

A. I only have a general understanding of how that system works because I don't deal with it on a day-to-day basis. My general understanding is that it will give you a vicinity.

Q. A vicinity?

A. Of where it was mailed from.

Q. Okay. Now, what do you mean by vicinity?

A. I believe that it signifies like, for instance, the Charleston area, that it was mailed from the Charleston area.

Q. Does it get more specific than the Charleston area?

A. No, sir.

Q. So, we can't, we can't look at the bar codes of the envelope and determine if it's from South Charleston versus Sissonville, is that correct?

A. I don't believe so, no.

Q. Okay. Now the bar codes have to be deciphered by a type of mail computer; is that correct?

A. Some type of machine, yes.

* * *

Q. You had just moments ago testified that there would be a bar code on the back of the envelope; is that correct?

A. That's correct.

Q. Normally speaking; is that correct?

A. Yes, sir.

Q. And you indicated that that would tell us where it came from; is that correct?

A. Well, now that I've thought about it, I believe it actually tells the vicinity where it's mailed from possibly and maybe the date and time.

11

```
Q.   So, you're not --

A.   That it came through the processing delivery
     center, the mail processing center.  Like I said,
     I'm not an expert on this, but this is what I
     believe.
```

                                * * *

```
Q.   Okay.  Is there a bar code on the back of the
     envelope [Government's Ex. 1]?

A.   Yes, there is.
```

                                * * *

```
Q.   I'll shorten the question.  Did the Postal Service
     make any attempt to trace where this envelope came
     from by the bar code that appeared on the back of
     the envelope?

A.   No, sir.
```

(# 114 at 15-23). Postal Inspector Fluharty further testified that no trace was made on any of the envelopes used as evidence in Defendant's case. (Id. at 22-23). In Defendant's closing argument, Mr. Dascoli reiterated that the government could have traced the bar codes, but did not. (# 115 at 42).

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Then, in United States v. Agurs, 427 U.S. 97, 111 (1976), the Court held that a prosecutor has a duty to disclose favorable evidence to the defense, even if not requested, but that the prosecutor does not

have a "constitutional duty routinely to deliver his entire file to defense counsel."

In order to state a valid Brady claim, the evidence must not only be favorable to the defendant, it must also be material to the verdict. The Supreme Court addressed the issue of materiality in United States v. Bagley, 473 U.S. 667, (1985), and again in Kyles v. Whitley, 514 U.S. 419 (1995). In Kyles, the Court held that the "touchstone of materiality is a 'reasonable probability' of a different result . . . . The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S. at 434. In essence, Brady constitutional error is demonstrated "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the [outcome]." Id. at 435.

Defendant merely states that "the mailing could have been traced to the area from which it was mailed from, but the prosecution did not." Defendant has not demonstrated that the government traced the envelopes and then withheld favorable evidence from Defendant. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not stated a valid Brady claim, and that he is entitled to no relief on this ground.

13

**C. Ineffective assistance of counsel claim.**

In Ground Three of his motion, Defendant contends:

> Mr. Dascoli had evidence and facts to prove the petitioner was not guilty of these crimes but refused [to] admight [sic; admit] [them] to the court. Mr. Dascoli refused to investigate evidence.

(# 126 at 5, Ground Three). In further support of this claim, Defendant states:

> Mr. Dascoli had corroborative evidence brought to his attention about the mail being stop[p]ed for weather and road conditions in the Charleston area, and he refused to [admit] this evidence . . . . These exhibits would have shown that these mailings could not have been mailed from the petitioner['s] home area. Should this evidence [have] been brought to the jury['s] attention, it would have shown that these mailings took place in another area, but Mr. Dascoli refused this evidence.

(Id. at 14-15).

The United States' Response points out that "defendant was engaged in ongoing conflict with his attorney during the course of the criminal representation." In fact, Defendant filed a complaint against Mr. Dascoli with the Office of Disciplinary Counsel. That complaint, however, was dismissed for lack of merit on June 22, 2004. (# 134, Ex. E). The United States' Response further states:

> Defendant's challenge to Mr. Dascoli's representation relies primarily upon Mr. Dascoli's alleged failure to develop the alibi theory regarding the mailing that defendant now asserts. When viewed against the entirety of the evidence, however, it is clear that this purported alibi evidence regarding the weather conditions at certain times in defendant's home area, would have provided little if any benefit to him at trial. The evidence supporting his participation in the mailings was so overwhelming that to suggest that his inability to reach a particular mailbox at a given time

14

>would have refuted that participation is little more than wishful thinking. Moreover, even if the alibi evidence had, somehow, been sufficient to defeat any of the claims of mailing threatening communications, it would have been of no benefit, whatsoever, with regard to the felon in possession charge based upon the discovery of a firearm in defendant's vehicle. Inasmuch as defendant's sentence was driven almost exclusively by the firearm possession, it is difficult, if not impossible, to imagine how defendant could have been prejudiced by Mr. Dascoli's trial strategy.

(# 134 at 8-9).

In <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the United States Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689.

An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out. <u>See</u> <u>Bassette v. Thompson</u>, 915 F.2d 932, 940-41 (4th Cir. 1991). The reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney. <u>See</u> <u>Bunch v. Thompson</u>, 949 F.2d 1354 (4th Cir. 1991). Furthermore, Standard 4-5.2(b) of the ABA Standards for Criminal

Justice concerning a defense attorney's function states that "[s]trategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate.  Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced."

In the instant case, it appears that counsel conducted an adequate investigation under the circumstances and presented an appropriate defense.  Based upon the items found in Defendant's vehicle, there was overwhelming evidence against Defendant, including the firearm, which formed the basis of Defendant's conviction as a felon in possession.  Mr. Dascoli's failure to investigate or further pursue an alibi defense concerning the charges of mailing threatening communications had no effect on the outcome of Defendant's conviction for being a felon in possession of a firearm.  That conviction, and the fact that Defendant qualified as an armed career criminal, largely dictated Defendant's sentence.  Thus, Defendant has not demonstrated that the results of the proceeding would have been different had Mr. Dascoli further developed the alleged "alibi" evidence.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his counsel was constitutionally ineffective for failing to develop the

"alibi" evidence, and that Defendant is entitled to no relief on this claim.

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (# 126).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United

17

States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant and counsel of record.

<table>
<tr><td>   October 31, 2005   <br>Date</td><td><em>/s/ Mary E. Stanley</em><br>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>

18